[No. B152610. Second Dist., Div. Three. June 5, 2003.]

CANTON POULTRY & DELI, INC., et al., Plaintiffs and Appellants, v. STOCKWELL, HARRIS, WIDOM & WOOLVERTON et al., Defendants and Respondents.

1220

## COUNSEL

Armen L. George for Plaintiffs and Appellants.

Musick, Peeler & Garrett, Mary Catherine M. Bohen and Cheryl A. Orr for Defendants and Respondents.

## OPINION

**ALDRICH, J.**—Plaintiff Canton Poultry & Deli, Inc. (Canton Poultry), and two of its officers, Shiu Lit Kwan and Cho Wah Kwan (collectively with Canton Poultry, plaintiffs), appeal from an order of dismissal entered after a demurrer was sustained to their complaint without leave to amend. The dismissal was entered in favor of Attorneys Daniel Ysabal and Mark Huang and the law firm that employs them, Stockwell, Harris, Widom & Woolverton (Ysabal, Huang, and collectively with the law firm defendant, Stockwell).

This case has its beginnings in a workers' compensation claim filed by plaintiffs' employee, Andrew Duran. Stockwell was retained by Canton Poultry's workers' compensation carrier, California Indemnity Insurance Company (California Indemnity), to handle the claim.[1]

According to the allegations in plaintiffs' complaint, Andrew Duran (Duran) also filed a civil suit against plaintiffs and was interested in a global

---

[1]We had occasion earlier in this action to address a petition for writ of mandate filed by California Indemnity, which was also named as a defendant in this case (but is not a party to

settlement of his two actions. The complaint alleges that Stockwell knew of the civil suit and Duran's desire for such a settlement, but failed to inform plaintiffs of these matters and thus no global settlement was ever reached. According to the complaint, the upshot was that plaintiffs were damaged when they had to expend more money on defending and settling the civil suit than they would have expended to simply settle it in conjunction with the workers' compensation case.

The question presented by plaintiffs' appeal is what duties, if any, did Stockwell owe to Canton Poultry in conjunction with the information it had about Duran's civil suit and his desire for a global settlement? Stated another way, can Stockwell be the legal cause of the alleged difference between what it would have cost plaintiffs to settle Duran's civil suit when his compensation claim was settled, and what it actually cost plaintiffs to defend and settle his civil suit?

The answer to the questions presented to us is found in Labor Code section 3755, which operated to dismiss Canton Poultry from the workers' compensation case when California Indemnity assumed its liability. We hold that when Canton Poultry was dismissed from the workers' compensation case by operation of law, whatever duties Stockwell had to Canton Poultry ended at that point in time, absent facts to conclude otherwise; here, no such extenuating facts were alleged in plaintiffs' complaint.

## BACKGROUND OF THE CASE

### 1. *Allegations in the Complaint*

Plaintiffs alleged causes of action against Stockwell for negligence, breach of fiduciary duty, and unfair trade practices. Their complaint contains the following allegations against Stockwell.

---

this appeal). We noted that the insurance policy for combined workers' compensation and employer's liability insurance coverage provided by California Indemnity to Canton Poultry are part of the same document, and its exclusions provisions are applicable to that entire document. The individual plaintiffs in the instant action are specifically excluded from workers' compensation and employer's liability coverage by the terms of the policy, and the coverage was made applicable only to plaintiff Canton Poultry. We concluded that neither individual plaintiff in this action was a covered insured, and therefore neither had standing to maintain an action against California Indemnity. The same conclusion necessarily applies to this action against Stockwell, since retention of Stockwell to handle the claim for workers' compensation was based on the policy of compensation insurance provided to Canton Poultry. Therefore, subsequent references in this opinion to "plaintiffs" are made for convenience only, and should not imply a belief on the part of this court that any plaintiff other than Canton Poultry has standing to pursue this appeal.

While Duran's workers' compensation case was pending, defendants Ysabal and Huang learned that Duran intended to file, or had already filed, a personal injury action against plaintiffs.[2] Ysabal and Huang were advised by Duran's attorney that Duran was interested in negotiating a global settlement of the two cases. However, Ysabal and Huang told Duran's attorney that a personal injury action by Duran against plaintiffs was none of their (Ysabal and Huang's) concern. Thereafter, neither Stockwell nor California Indemnity advised plaintiffs that California Indemnity was negotiating to settle the compensation case, nor did they advise plaintiffs that Duran was interested in a global settlement.

In July 1999, Duran would have settled his civil suit for $4,000 if there had been a global settlement. On February 28, 2000, plaintiffs paid Duran $6,500 to settle that suit, a sum less than plaintiffs' anticipated trial costs. Plaintiffs also expended more than $10,000 on costs and attorney's fees in defending the suit. Additionally, defending the civil suit required the Kwan plaintiffs to spend time on the civil suit and deprived plaintiff Canton Poultry of their services. Thus, Canton Poultry suffered damages in excess of $20,000 because no global settlement was made. Moreover, in July 1999, plaintiffs' defense of the civil suit "was being covered by another insurance carrier," and such carrier would have contributed to a global settlement of the compensation case.

On February 22, 2000, Duran's attorney, Andrew Schwartz, "confirmed for the record" that when he represented Duran in the compensation case, he advised Ysabal and Huang that Duran intended to pursue a civil personal injury against plaintiffs, and that Duran was interested in a global settlement. It was also on February 22, 2000, that Duran and Schwartz "confirmed for the record" that in July 1999, Duran would have agreed to a global settlement for an additional $4,000. But for these statements by Duran and Schwartz, plaintiffs would not have possessed sufficient evidence to justify filing the instant suit for breach of Stockwell's and California Indemnity's respective obligations to disclose material information to plaintiffs.

It was not until January 22, 2001, that Stockwell asserted to plaintiffs that plaintiffs were not its client in the compensation case, but rather it

[2]Duran's civil suit against plaintiffs was filed on March 16, 1999, and contains causes of action for assault and battery, intentional infliction of emotional distress, and wrongful discharge. It alleges Duran was attacked in a bar after work hours and the attack caused Duran to lose the sight in his right eye, and thereafter, when Duran returned to work, Shiu Lit verbally and physically assaulted and battered Duran on numerous occasions, and plaintiff Cho Quan verbally assaulted him, until plaintiff was eventually fired. The workers' compensation claim is based on the same injury to Duran.

represented only California Indemnity. Neither Stockwell, nor California Indemnity, had ever before advised plaintiffs that Stockwell represented California Indemnity rather than plaintiffs in the compensation case, nor that a conflict of interest might exist in Stockwell's service in the compensation case. Plaintiffs were led to believe that Stockwell was retained as their counsel, and that Stockwell would advise them of material matters affecting their interests. Further, neither Stockwell nor California Indemnity ever advised plaintiffs that plaintiffs might be entitled to employ independent counsel, at California Indemnity's expense, because of the civil personal injury suit Mr. Duran intended to bring against plaintiffs.

If plaintiffs had been advised, prior to the July 1999 settlement of the compensation case, that such settlement negotiations were taking place, and that Duran was interested in a global settlement, plaintiffs would have participated in the negotiations or otherwise sought to safeguard their interests, including contributing $4,000 of their own funds to secure a global settlement of Duran's claims, while reserving any rights they may have against California Indemnity.

Because of its services in the compensation case and its knowledge of Duran's desire of a global settlement, plaintiffs allege that Stockwell had a duty to notify plaintiffs of that development. At the very least, they allege, Stockwell had a duty to advise plaintiffs that it represented California Indemnity's interests exclusively, and a duty to notify California Indemnity of Duran's personal injury suit and his desire for a global settlement so that California Indemnity could, in turn, honor its obligations to plaintiffs. Stockwell owed and breached a fiduciary duty to plaintiffs, notwithstanding that its services were paid for by California Indemnity, not plaintiffs, and that plaintiffs were relieved of liability as a matter of law under Labor Code section 3755. Stockwell also owed a duty to plaintiffs, under Civil Code section 2860, to disclose potential conflicts of interest between California Indemnity and plaintiffs.[3]

Plaintiffs also allege that Stockwell's views and actions constitute unfair trade practices, and Stockwell and California Indemnity should notify insured employers of those views and practices. Stockwell has opposed plaintiffs' efforts to secure a written opinion from the State Bar of California

---

[3]Labor Code section 3755 provides for an employer's relief from liability in a workers' compensation case after its carrier assumes liability for the employee's claim. Civil Code section 2860 addresses conflicts of interest between an insurer and its insured, and the resulting duty to appoint independent counsel for the insured (see also *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]).

respecting the propriety of its view respecting the duties owed to employers by attorneys who are retained by the employers' insurance carriers in workers' compensation cases.

## 2. *Procedural Background*

This suit was filed on February 20, 2001. Both Stockwell and California Indemnity generally demurred to the complaint. The trial court sustained Stockwell's demurrer without leave to amend, based on the court's finding that defendants owed no duty to plaintiffs given the provisions in Labor Code section 3755. An order dismissing defendants from the case was signed and filed on July 16, 2001. Thereafter, plaintiffs filed this timely appeal.[4]

### ISSUE PRESENTED BY THIS APPEAL

Although Stockwell asserted several grounds to support its general demurrer to Canton Poultry's complaint, the trial court sustained the demurrer on the basis of just one of those grounds, Labor Code section 3755. Canton Poultry focuses its appeal on the effect that statute has on its case against Stockwell, and it requested time for additional briefing if we affirmed the order of dismissal on another ground. Because we find that section 3755 supports the trial court's order, we limit our analysis and discussion to that dispositive statutory issue.

### DISCUSSION

### 1. *Standard of Review*

A demurrer tests the sufficiency of the allegations in a complaint as a matter of law. (*Pacifica Homeowners' Assn. v. Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1151 [224 Cal.Rptr. 380].) We review the sufficiency of the challenged complaint de novo. (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 529 [260 Cal.Rptr. 713].) We accept as true the properly pleaded allegations of fact in the complaint, but not the contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We also accept as true facts which may be inferred from those expressly alleged. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37

---

[4]The trial court sustained California Indemnity's demurrer with leave to amend. After amended complaints were filed, and California Indemnity pursued mandamus relief from this court, California Indemnity's demurrer to the last complaint was sustained without leave to amend, and it was dismissed from the action.

Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) We consider matters which may be judicially noticed, and we "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) We do not concern ourselves with whether the plaintiff will be able to prove the facts which it alleges in the complaint. (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1521 [37 Cal.Rptr.2d 810].) The judgment or order of dismissal must be affirmed if any of the grounds for demurrer raised by the defendant is well taken and disposes of the complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) ■ It is error to sustain a general demurrer if the complaint states a cause of action under any possible legal theory. (*Ibid.*) It is an abuse of the trial court's discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the plaintiff can amend the complaint to allege any cause of action. To prove abuse of discretion, the plaintiff must demonstrate how the complaint can be amended. Such a showing can first be made to the reviewing court. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)

### 2. The Relevance of Labor Code Section 3755

Labor Code section 3755 provides that when an employer carries workers' compensation insurance and the compensation carrier serves notice on a workers' compensation claimant that the carrier has agreed to pay to the claimant such compensation as the claimant's employer is liable for, *the employer is relieved of liability for that compensation* once a copy of that notice is filed with the workers' compensation appeals board. Then the insurer is substituted in place of the employer in any proceeding instituted by the claimant to recover such compensation, and the employer is dismissed from such proceeding. The proceedings then continue against the insurer instead of the employer. The employer is thus out of the picture for purposes of those workers' compensation proceedings. It is conceded in plaintiffs' complaint that such legal substitution took place in this case.[5]

Up until the dismissal of the employer, the claimant and his or her attorney are on one side of the litigation, and the employer, its insurer, and the attorney hired by the insurer to handle the compensation claim are on the other. ■ In effect, Labor Code section 3755 relieves the employer of

---

[5]Plaintiffs assert in their appellate brief that neither Stockwell nor California Indemnity provided evidence to the trial court that a section 3755 notice was ever served upon claimant Duran or his attorney. However, plaintiffs' own complaint alleges that "Canton [Poultry] was relieved of liability as a matter of law pursuant to the terms of Labor Code section 3755."

duties to the claimant, within the parameters of the compensation case, from the time of dismissal of the employer from the workers' compensation action. Section 3755 does not expressly address the liability, duties and rights of attorneys—vis-à-vis employers—who are hired by the insurer who steps in to take the employer's place in the compensation case.

At the hearing on Stockwell's demurrer, the court asked plaintiffs why Labor Code section 3755 does not preclude their suit against Stockwell. The court stated that statute relieves the employer "completely. They're out." Plaintiffs argued that while section 3755 relieves the employer of liability, it does not relieve an attorney who is "in that case from the beginning and thereafter" from a duty to the employer. Plaintiffs argued that Stockwell was "with them to begin with on day one" and *plaintiffs believed* that Stockwell was "defending their interest."

To have any legal effect, Canton Poultry's belief that Stockwell represented it even after it was dismissed from the workers' compensation case had to be reasonable. (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 959 [226 Cal.Rptr. 532].) Thus we ask: What is an employer *reasonably* to believe about the attorney that is hired by its workers' compensation insurer? The employer knows that the attorney was hired because of a claim against the *employer*. It is reasonable for the employer to believe that the attorney was hired on its behalf even though the insurer is paying for the representation, and indeed, in *Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1235-1237 [45 Cal.Rptr.2d 565], we acknowledged that in such circumstances, an attorney can have an attorney-client representation with both insurer and insured. We said that when counsel is hired by an insurance carrier to defend its insured, the attorney has a dual-client relationship, absent a conflict of interest between the carrier and the insured that would keep the attorney from representing both. *Unigard* addressed representation provided for in a liability insurance policy. We can think of no reason why in the instant case there should be a different result.

Here, plaintiffs' complaint alleges that pursuant to the workers' compensation policy, California Indemnity was obligated to undertake plaintiffs' defense when Duran filed his claim, and California Indemnity retained Stockwell to defend against that claim. It is reasonable, in such a situation, for an employer to believe that the attorney is looking out for the employer's interests. Indeed, it is because of the attorney's efforts that the employer is dismissed from the case.

However, after the employer has been dismissed from the workers' compensation case and the case proceeds solely against the insurer, the employer

has no reasonable basis to believe that it is still in an attorney-client relationship with the attorney, absent developments in the workers' compensation case itself that require the attorney to protect or defend the interests of the employer (Canton Poultry gives the example of the employer being deposed in the compensation case if it does not settle, or prior to settlement). An employer's reasonable belief at that point in time must necessarily be that the attorney represents the party who has been substituted in place and stead of the employer, and who remains involved in the case—the insurance carrier.

Intent and conduct are critical to the formation of an attorney-client relationship. (*Hecht v. Superior Court* (1987) 192 Cal.App.3d 560, 565-566 [237 Cal.Rptr. 528].) Here, Canton Poultry does not allege that Stockwell intended to act as its attorney, that it sought legal advice of any sort from Stockwell, or that Stockwell ever offered it legal advice. Indeed, the complaint contains no allegations that Stockwell ever communicated with plaintiffs. ■ It is true that where circumstances indicate that an insured might be misled as to the extent of an attorney's representation of the insured, if any, "the attorney has the duty to make it clear to the insured that he represents only the [insurance] company . . . ." (*Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 150 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) Here, however, the complaint does not allege facts constituting such circumstances.

■ Because there was no attorney-client relationship between Stockwell and plaintiffs when Duran offered to negotiate a global settlement of his workers' compensation and civil cases, the causes of action for negligence and breach of fiduciary duty can have no factual basis and were properly found to not state a cause of action. Plaintiffs' complaint alleges that when Stockwell was informed that employee Duran was interested in negotiating a global settlement of both of his cases against plaintiffs, Stockwell told Duran the civil action was none of its concern. We agree with Stockwell's response. Duran was left to convey his desire for a global settlement to someone else, either to plaintiffs, or if they had an attorney or insurance representation in the civil suit at that time, to the party or parties representing plaintiffs.[6]

---

[6]Canton Poultry argues that the documents in the workers' compensation case stated that Stockwell was appearing in that case on behalf of "defendant" and the defendant was not California Indemnity. We note that there are several workers' compensation documents in the appellate record. Two have a box where the "applicant's" and "defendants'" names can be listed. On those documents, both plaintiff Canton Foods and California Indemnity are listed as the defendants. Two others simply list the title of the case as "Andrew Duran v. Canton

Likewise, there is no merit to Canton Poultry's contention that Duran's civil suit created a conflict of interest between itself and California Indemnity in the workers' compensation case and therefore Stockwell had a duty to advise Canton Poultry that in cases where there is a conflict of interest between an insured and its insurer, the insured is entitled under *San Diego Federal Credit Union v. Cumis Ins. Society, Inc., supra,* 162 Cal.App.3d 358 and Civil Code section 2860 to be represented by independent counsel. Since Canton Poultry was relieved of liability in the workers' compensation case by operation of Labor Code section 3755, there could be no conflict of interest between itself and California Indemnity in that case. It therefore necessarily follows that case and statutory law relating to independent counsel do not apply in this case, and further necessarily follows that Stockwell's position regarding the facts of this case does not constitute an unfair business practice.

## DISPOSITION

The order dismissing defendants Stockwell, Harris, Widom & Woolverton, and Daniel Ysabal and Mark Huang from this case is affirmed. Costs on appeal to defendants.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied July 1, 2003, and on July 2, 2003, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied October 1, 2003. Kennard, J., was of the opinion that the petition should be granted.

---

Food." Two of the documents identify Stockwell as the attorney for "defendant" but do not indicate to whom the term "defendant" refers. In any event, given that as a matter of law plaintiffs were no longer liable for workers' compensation on Duran's claim after the provisions of Labor Code section 3755 became operative, the "defendant" in the case effectively became California Indemnity.