316 P.3d 1235

Ronald A. SIMMS and Victoria Simms, individually and on behalf of their marital community; Ronald A. Simms, a married man dealing with his sole and separate property; Ronald A. Simms as Trustee of Ronald A. Simms Perpetual Asset Shield Trust; Ronald A. Simms as Trustee of RAS Trust; and RASCD, Inc., a California corporation, Petitioners,

v.

The Honorable Douglas RAYES, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

TP Racing, LLLP, an Arizona limited liability partnership; Jeremy Ellis Simms, in his individual capacity; Jeremy and Serena Simms, husband and wife; J & R Racing LLC, an Arizona corporation; and J. Simms Enterprises LLC, an Arizona limited liability company, Real Parties in Interest.

No. 1 CA–SA 13–0123.

Court of Appeals of Arizona, Division 1.

Jan. 2, 2014.

---

Greenberg Traurig, LLP By E. Jeffrey Walsh, Nicole M. Goodwin, Phoenix, for Petitioners.

Stinson Morrison Hecker, LLP By Michael C. Manning, James M. Torre, Phoenix, for Real Parties in Interest.

Judge RANDALL M. HOWE delivered the opinion of the Court, in which Presiding Judge PETER B. SWANN and Judge JOHN C. GEMMILL joined.

## OPINION

HOWE, Judge.

¶ 1 This special action arises from the trial court's disqualification of Petitioners' counsel, Greenberg Traurig, LLP ("GT"), from representing Petitioners in pursuing derivative claims against TP Racing, LLLP. We accept jurisdiction because Petitioners have no adequate remedy by appeal and raise a legal issue that may recur. *Sec. Gen. Life Ins. Co. v. Tallent,* 149 Ariz. 332, 333, 718 P.2d 985, 986 (1986) (holding that disqualification order was not appealable and special action jurisdiction was therefore ap-

propriate); *State ex rel. Romley v. Superior Court (Flores)*, 181 Ariz. 378, 380, 891 P.2d 246, 248 (App.1995) (same). We grant relief because the trial court erred in disqualifying GT as Petitioners' counsel.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Brothers Ron and Jerry Simms are the principal owners of TP Racing, a limited partnership that owns Turf Paradise Racetrack. Ron individually owns an 18 percent interest in TP Racing and his trust owns a 14 percent interest. Jerry owns a 55 percent interest in TP Racing. J & R Racing, LLC, is the general partner and manager of TP Racing. Jerry and RASCD, Inc.—a corporation of which Ron is the sole shareholder—each have a 50 percent interest in J & R Racing. Jerry serves as J & R Racing's manager and makes the day-to-day decisions, but other management decisions require RASCD's consent.

¶ 3 In July 2010, TP Racing separately sued Ron and one of Ron's corporations, and the trial court consolidated these actions. Ron answered the complaints and counterclaimed[1] against TP Racing,[2] alleging, among other things, breaches of contract and breaches of fiduciary duty. GT was Ron's counsel in this litigation.

¶ 4 In August 2011, TP Racing moved to disqualify GT because the firm was representing Ron in his defense against TP Racing's claims and in his counterclaims brought against TP Racing. Ron, in turn, moved to disqualify TP Racing's counsel, alleging that Jerry and TP Racing were adverse to each other on some claims and that Jerry and TP Racing had hired their counsel without Ron's consent. After oral argument on the motions, the trial court denied TP Racing's motion because GT had never asserted that it represented TP Racing and was not seeking relief on TP Racing's behalf, and denied Ron's motion because Jerry and TP Racing were not adverse to each other.

¶ 5 In March 2012, TP Racing moved to dismiss Ron's counterclaims. TP Racing argued that Ron lacked standing to bring certain claims because they were derivative: they sought redress for harms Jerry allegedly caused TP Racing, not for harms caused to Ron personally. TP Racing also argued that the remaining counterclaims failed to state a claim upon which relief could be granted. The trial court agreed and dismissed the counterclaims without prejudice.

¶ 6 Before refiling certain counterclaims as derivative claims, Ron filed a "Motion for a Determination of No Conflict," asking the trial court to determine that GT could represent Ron on the derivative claims brought in TP Racing's name without creating a conflict of interest between GT and TP Racing. Ron argued that no conflict existed because no attorney-client relationship existed between GT and TP Racing. TP Racing opposed the motion and moved to disqualify GT, arguing that GT had a conflict of interest because it was representing Ron simultaneously in defending against claims by TP Racing, in pursuing claims against TP Racing, and in pursuing derivative claims on behalf of TP Racing.

¶ 7 The trial court denied Ron's motion and granted TP Racing's motion to disqualify GT for the reasons set forth in TP Racing's motion. Ron now seeks relief from that order with the present petition for special action.

## DISCUSSION

¶ 8 This Court reviews a trial court's ruling on a motion to disqualify counsel for an abuse of discretion. *Smart Indus. Corp., Mfg. v. Bradshaw*, 179 Ariz. 141, 145, 876 P.2d 1176, 1180 (App.1994). When the

---

1. Included as counterclaimants are Ron's wife and several trusts and corporations in which Ron has an interest. For clarity and ease of reference, the court will refer to the counterclaimants as "Ron."

2. Included as counterdefendants are Jerry, Jerry's wife, and two other entities in which Jerry has an interest. For clarity and ease of reference, the court will refer to the counterdefendants as "TP Racing."

trial court's decision is not based on the resolution of disputed factual issues but the application of legal principles, however, we review the decision de novo as an issue of law. *See Tritschler v. Allstate Ins. Co.,* 213 Ariz. 505, 518 ¶ 41, 144 P.3d 519, 532 (App. 2006) ("A court abuses its discretion if it commits legal error in reaching a discretionary conclusion."); *Chih Teh Shen v. Miller,* 212 Cal.App.4th 48, 150 Cal.Rptr.3d 783, 788 (2012) ("[W]here there are no material disputed factual issues, the appellate court reviews the trial court's determination [on disqualification] as a question of law."). The nature of disqualification motions requires a "careful review" of the trial court's ruling. *Chih Teh Shen,* 150 Cal.Rptr.3d at 788 (*quoting People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.,* 20 Cal.4th 1135, 86 Cal.Rptr.2d 816, 980 P.2d 371, 377 (1999)). Because disqualification interferes with a party's attorney-client relationship, disqualification motions are subject to "tactical abuse," *id.,* and are "view[ed] with suspicion," *Gomez v. Superior Court (Dawson),* 149 Ariz. 223, 226, 717 P.2d 902, 905 (1986). They should be granted "[o]nly in extreme circumstances," and the party seeking disqualification has the burden of proof. *Alexander v. D'Angelo,* 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984).

¶ 9 The issue in this case is whether GT has a conflict of interest in representing Ron on his derivative claims on behalf of TP Racing because GT also represents Ron in his defense against claims by TP Racing. Ron argues that no conflict exists because GT's only attorney-client relationship is with him, and not with TP Racing. TP Racing argues that although GT has no attorney-client relationship with it, GT still owes a fiduciary duty to it because the derivative claims are pursued *on behalf of* TP Racing, which impermissibly places GT as counsel on both sides of the litigation.

■ ¶ 10 Conflict of interest disputes are resolved under Arizona Rules of Professional Conduct Ethical Rule ("ER") 1.7(a). That rule prohibits a lawyer from representing a client if (1) that representation will be directly adverse to another client or (2) a significant risk exists that the lawyer's responsibilities to another client, a former client, a third person, or to the lawyer's personal interest will materially limit the client's representation. The "threshold question" is whether an attorney-client relationship exists between the lawyer and an adverse party. *Gonzalez ex rel. Colonial Bank v. Chillura,* 892 So.2d 1075, 1077 (Fla.Dist.Ct.App.2004).

■ ¶ 11 As TP Racing concedes, no attorney-client relationship exists between GT and TP Racing. An attorney-client relationship exists when a person has manifested to a lawyer his intent that the lawyer provide him with legal services and the lawyer has manifested consent to do so. *Paradigm Ins. Co. v. Langerman,* 200 Ariz. 146, 149 ¶ 10, 24 P.3d 593, 596 (2001) (*quoting* Restatement (Third) of the Law Governing Lawyers § 14). Nothing in the record shows that TP Racing manifested to GT its intent that GT provide legal services to it or that GT manifested any consent to do so. GT's only attorney-client relationship is with Ron.

¶ 12 The fact that GT's client Ron—in his capacity as a minority partner of TP Racing—has filed derivative claims on behalf of TP Racing changes nothing. Although no Arizona appellate court has considered the issue, courts that have considered the issue have held that lawyers are not disqualified from representing clients who are simultaneously pursuing direct claims against a corporation and derivative claims on behalf of that corporation. *See Chih Teh Shen,* 150 Cal.Rptr.3d at 789–91; *Gonzalez,* 892 So.2d at 1077–78 (applying Florida Rule of Professional Conduct 4–1.7, identically worded to ER 1.7); *see also In re Dayco Derivative Sec. Litig.,* 102 F.R.D. 624, 630 (S.D.Ohio 1984) ("the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing both an individual and a derivative action") (footnote omitted). This is so because of the nature of derivative actions.

■ ¶ 13 Derivative actions allow a minority shareholder to pursue a claim on behalf of

a corporation when the management of the corporation has refused to pursue the claim itself. *Kamen v. Kemper Fin. Serv., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). The corporation is merely a nominal party in a dispute between a minority shareholder and the management that controls the corporation. *See Chih Teh Shen,* 150 Cal.Rptr.3d at 790–91; *Gonzalez,* 892 So.2d at 1078; *see also Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (noting that in a derivative action, the corporation is a nominal party). The corporation thus is not a "client" of the lawyer for the minority shareholder and the lawyer has no attorney-client relationship with it. If the filing of a derivative claim created an attorney-client relationship between the corporation and the lawyer for the minority shareholder, "there would be no way for the derivative plaintiff to ever have conflict-free counsel." *Gonzalez,* 892 So.2d at 1078. The corporation would then control who could represent the minority shareholder, "letting the fox guard the chicken coop." *Id.*

¶ 14 Because the lawyer in a derivative action has an attorney-client relationship only with the minority shareholder, nothing prevents the lawyer from also representing the minority shareholder on any direct claims against the corporation or its management that arise from the same set of facts. The shareholder may sue directly for harms the mismanagement of the corporation has caused him personally, and derivatively for harms the mismanagement has caused the corporation. *See Chih Teh Shen,* 150 Cal. Rptr.3d at 795 ("Shen's individual and derivative claims revolve around the same nucleus of facts alleging misconduct by corporate mismanagement.") (internal quotation marks and citation omitted); *Dayco,* 102 F.R.D. at 631 ("The legal theory underlying the deriva-

tive suit and Lovorn's complaint in state court is parallel and entirely compatible."). The lawyer is not representing adverse interests in this situation.

¶ 15 The same analysis applies to Ron's claims involving TP Racing. Just as a shareholder has the right to pursue a derivative action on behalf of a corporation, a minority partner in a limited partnership has the right to pursue a derivative action on behalf of a partnership. A.R.S. § 29–356. Ron's direct claims are aligned with the derivative claims filed on behalf of and for the benefit of TP Racing. The direct claims are against TP Racing and Jerry for harm Jerry has caused Ron in his alleged mismanagement of TP Racing. These claims include breach of the partnership agreement, breach of the covenant of good faith and fair dealing, and breach of the duty of loyalty. The derivative claims similarly allege mismanagement of TP Racing by its manager, Jerry. These claims include breach of the fiduciary duties of loyalty and due care. Because Ron's interests in his direct claims and the interests of TP Racing in the derivative claims are aligned, GT is not representing adverse interests and has no conflict of interest cognizable under ER 1.7(a).[3]

¶ 16 TP Racing argues, however, that the true issue is not whether GT can represent Ron on both his direct claims and his derivative claims, but whether GT can represent Ron on the derivative claims while defending Ron against claims filed by TP Racing. But the answer remains the same. GT has an attorney-client relationship with Ron, with all its attendant duties to Ron; GT has no relationship with or duty to TP Racing. The fact that the derivative claims are filed nominally in TP Racing's name and that the benefits of any successful prosecution will flow to TP Racing creates no duty on GT's part to TP Racing.

---

**3.** TP Racing argues that Ron has his own conflict of interest in pursuing direct claims and derivative claims against TP Racing that should be imputed to GT, and cites several federal district court decisions that hold that a minority shareholder may not pursue derivative claims against a corporation while being a member of a class action against the corporation. Not only does TP Racing fail to present any authority for the proposition that a client's conflict of interest may be imputed to the client's lawyer, the question whether Ron has some conflict of interest that prevents him from presenting derivative claims is not before us.

¶ 17 TP Racing nevertheless argues that even though no attorney-client relationship exists between GT and TP Racing, GT still has a conflict of interest under ER 1.7(a) because the derivative claims impose a fiduciary duty on GT to TP Racing that conflicts with GT's duty to Ron. Although a fiduciary duty does exist in a derivative action, it exists between the corporation or partnership and the minority shareholder or partner asserting the derivative claim. *See Chih Teh Shen,* 150 Cal.Rptr.3d at 790; *South v. Baker,* 62 A.3d 1, 21 (Del.Ch.2012). Thus, Ron, as the minority limited partner asserting the derivative claim, has a fiduciary duty to act in TP Racing's interest. GT is counsel for the person having the fiduciary duty to TP Racing; the firm itself has no separate fiduciary duty to TP Racing.

¶ 18 TP Racing relies on *In re Estate of Shano,* 177 Ariz. 550, 869 P.2d 1203 (App. 1993), to support its claim that GT has its own—or at least a derivative—fiduciary duty to TP Racing. The lawyer in *Shano* initially represented the beneficiary of a holographic will and moved the probate court to appoint the beneficiary as the special administrator for the decedent's estate. *Id.* at 552, 869 P.2d at 1205. The decedent's wife subsequently submitted an earlier will for probate, which named her and her children as beneficiaries. *Id.* The probate court, upon the parties' stipulation, appointed a new third-party administrator of the estate because of the conflict between the original administrator—the beneficiary of the holographic will—and the decedent's wife. *Id.* The lawyer then ceased representing the beneficiary of the holographic will and associated as co-counsel with the lawyer representing the third-party administrator. *Id.* The decedent's wife then filed several claims against the estate, and the lawyer, acting as counsel for the third-party administrator, opposed the claims. *Id.* at 553–54, 869 P.2d at 1206–07. The decedent's wife moved to disqualify the lawyer because he had a conflict of interest, and the

probate court granted the motion. *Id.* at 554, 869 P.2d at 1207.

¶ 19 On appeal, this Court affirmed the disqualification, ruling that the lawyer had represented conflicting interests. *Id.* We noted that the administrator had a fiduciary duty to the successor to the decedent's estate—the decedent's wife—and that the lawyer thus had a derivative fiduciary duty to the decedent's wife, which has been materially limited by his previous representation of the beneficiary of the holographic will. *Id.* at 554–55, 869 P.2d at 1207–08. We recognized that no authority had ever held that a *lawyer* for an administrator had a fiduciary duty to the successors to an estate, but held that the peculiar circumstances of estate administration justified the imposition of such a duty because the lawyer was compensated not by the administrator, but from the estate itself, and the lawyer, through his superior knowledge and position of trust, was able to influence the administrator in discharging its duties. *Id.* at 555, 869 P.2d at 1208.

¶ 20 *Shano* is distinguishable in two salient ways. First, the lawyer in *Shano* had a conflict of interest because he had represented one party in what developed into a will contest and then represented the administrator of the decedent's estate that had a neutral fiduciary duty to all of the will contestants. *See* ER 1.9 ("Duties to Former Clients"). Here, GT has represented only Ron in this litigation and had no prior relationship with or duty to TP Racing that would create a conflict. Second, none of the peculiar circumstances discussed in *Shano* are present here. Ron is responsible for paying GT's fees, not TP Racing, and this case has no neutral arbiter in the role of an administrator on which GT has special influence. *Shano* does not change the result here. GT has no fiduciary duty to TP Racing that constitutes a conflict of interest under ER 1.7(a).[4]

¶ 21 GT's representation of Ron on his derivative claims against Jerry on behalf of

---

4. We do not mean to say that a litigant could never prove that because of the specific circumstances of a case, a limited partner's lawyer has an actual conflict of interest in representing the limited partner in pursuing derivative claims. *See Dayco,* 102 F.R.D. at 631 (although rejecting argument that the lawyer's representation of minority shareholder on direct claims against cor-

TP Racing does not create an attorney-client relationship with TP Racing or impose on GT a fiduciary duty to TP Racing. The trial court thus had no basis to find that GT had a conflict of interest because GT also represents Ron in defending against TP Racing's claims and in pursuing direct counterclaims against TP Racing. The trial court erred in granting TP Racing's motion to disqualify GT from representing Ron on the derivative claims.

## CONCLUSION

¶ 22 We accept jurisdiction and grant relief. We reverse the trial court's order granting the motion to disqualify Greenberg Traurig from representing Petitioners on the derivative claims.

poration and on derivative claims on behalf of corporation by itself created an "irreconcilable conflict of interest" warranting disqualification, nevertheless examining whether the particular facts of the case established an "actual" conflict of interest). But no such circumstances are present on this record.