NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NATALIE ORLANDO and DANIEL ORLANDO,
wife and husband, *Petitioners,*

*v.*

THE HONORABLE JOSEPH C. BUTNER, III, Judge Pro Tempore of the
SUPERIOR COURT OF THE STATE OF ARIZONA,
in and for the County of YAVAPAI,
*Respondent Judge Pro Tempore,*

SALLY HARGROVE, an unmarried woman,
*Real Party in Interest.*

No. 1 CA-SA 14-0162
FILED 09-30-2014

Petition for Special Action from the Superior Court in Yavapai County
No.  P1300CV201300125
The Honorable Joseph C. Butner, III, Judge *Pro Tempore*

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Warnock, MacKinlay & Carman, PLLC, Prescott
By Brian R. Warnock and Krista M. Carman
*Counsel for Petitioners*

Dean R. Cox, L.L.C., Prescott
By Dean R. Cox
*Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

---

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

**¶1**        Natalie and Daniel Orlando ("the Orlandos") seek special action relief from the superior court's order disqualifying their counsel of record, the law firm of Warnock, MacKinlay and Carman, PLLC ("WMC"). Because we conclude the superior court did not abuse its discretion in ordering disqualification, we accept jurisdiction and deny relief.

## BACKGROUND

**¶2**        In May 2008, Sally Hargrove, represented by attorney Christopher Jensen, filed a lawsuit in Yavapai County Superior Court against the Orlandos alleging Hargrove suffered serious injuries as a result of Natalie Orlando's negligence in a car-pedestrian accident ("the personal injury litigation"). At the time of the accident, the Orlandos carried liability insurance through American Family Insurance ("American Family") of $15,000 on the vehicle involved in the accident, which was used for business and family purposes. The Orlandos were represented by both insurance defense counsel and WMC.

**¶3**        In January 2010, the Orlandos filed suit in Maricopa County Superior Court against American Family alleging its insurance agent negligently failed to advise them to obtain more than the statutory minimum of automobile liability insurance coverage ("the American Family litigation").

**¶4**        In September 2010, Hargrove's personal injury claim proceeded to a jury trial. During trial, it was discovered that several jurors may have engaged in misconduct. To avoid a possible mistrial, the parties agreed to a settlement conditioned upon the following. If the jury returned a verdict in favor of Hargrove, judgment would be entered against the Orlandos, who would then assign all of their claims against their insurer in the American Family litigation to Hargrove. In exchange for the assignment, the Orlandos would not seek a mistrial and Hargrove would not execute on the judgment against the Orlandos. The superior court

2

confirmed the agreement by all parties and counsel. Following a verdict in favor of Hargrove, the court entered judgment against the Orlandos in the amount of $655,776.12. The parties then formalized their agreement by executing an assignment and covenant not to execute ("the assignment and covenant"). The covenant provided in pertinent part that the Orlandos would "furnish full and complete communication, cooperation, documentation, and, as necessary, sworn testimony to support the assigned claims" against American Family and they would "execute such additional documents as may be necessary to carry out the intent" of the covenant.

¶5        Meanwhile, the primary issue in the American Family litigation was the basis for the Orlandos' decision not to increase their automobile insurance coverage after they expanded their business. In an attempt to place responsibility for this decision upon the Orlandos or third parties, American Family sought to show that the Orlandos' business advisors either instructed or should have instructed the Orlandos to increase their liability coverage. In a June 2010 disclosure statement, American Family noted its intent to identify as nonparties at fault "lawyers, accountants, and other business consultants" who worked with the Orlandos in the "establishment of a small business in the fall of 2007."

¶6        In November 2010, in response to American Family's discovery requests, WMC identified WMC partner Andre Carman as the attorney who advised the Orlandos regarding the transition of their small business from a sole proprietorship to a corporation. Shortly thereafter, pursuant to the assignment and covenant, Jensen and WMC filed a joint motion requesting that Jensen be substituted for WMC as counsel of record for plaintiff(s) (Hargrove and/or Orlandos, depending upon the outcome of a motion to substitute) in the American Family litigation. At the same time, and also as provided by the assignment and covenant, Hargrove and the Orlandos filed a joint motion to substitute Hargrove in place of the Orlandos as the sole plaintiff or, in the alternative, as an additional plaintiff. The superior court granted the motion to substitute counsel but denied the motion to substitute or add Hargrove as a plaintiff.

¶7        In August 2012, a protracted dispute arose regarding the Orlandos' obligation to cooperate and furnish documents to Hargrove under the assignment and covenant. Jensen repeatedly inquired as to Carman's status as a possible nonparty at fault and witness, and requested access to WMC's legal files for both the personal injury litigation and the American Family litigation. Although Jensen insisted the assignment and covenant permitted him to inspect all legal files relevant to claims and defenses in the American Family litigation, the Orlandos ultimately refused

to authorize a release of the files. Jensen also asserted that WMC had a conflict of interest that precluded it from representing the Orlandos in the American Family litigation given the circumstances surrounding Carman's advice to the Orlandos regarding their business. Jensen further asserted that if the Orlandos failed to comply with his requests for documents such inaction would constitute a breach of the assignment and covenant.

¶8 After the Orlandos informed Jensen they would seek his disqualification, Jensen moved to withdraw from the American Family litigation. The superior court granted the motion in February 2013. Three days later, the Orlandos (represented by WMC) initiated the instant litigation by filing a complaint in Yavapai County Superior Court ("current litigation") seeking a declaration that Hargrove breached the assignment and covenant. In March 2013, through new counsel Timothy Ducar, Hargrove filed a counterclaim asserting that the Orlandos had breached the assignment and covenant. The Orlandos then filed a third-party claim against Jensen, alleging he was responsible for the breach of the parties' agreements.

¶9 In April 2013, WMC contacted Ducar and requested that Hargrove "appoint" replacement counsel in the American Family litigation for the Orlandos pursuant to the assignment and covenant. Hargrove disagreed that she had any obligation to appoint such counsel. For reasons that are not clear from the limited record before us, the Orlandos entered into a stipulation with American Family to dismiss the American Family litigation. The superior court accepted the stipulation on May 22, 2013, and ordered the case dismissed with prejudice.

¶10 In April 2014, Hargrove moved to disqualify WMC from further representation of the Orlandos in the current litigation. Hargrove argued WMC's continued representation of the Orlandos gave the appearance of impropriety and violated Arizona Rules of Professional Conduct Ethical Rules ("ER") 1.9 and 3.7. The Orlandos objected and filed a cross-motion to disqualify Ducar from further representation of Hargrove. After hearing oral argument, the superior court granted the motion to disqualify WMC, concluding that Warnock and Carman are potential witnesses in the current litigation. The Orlandos then filed this special action.

**JURISDICTION**

**¶11**          "An order granting a motion to disqualify counsel prior to trial is an interlocutory order" for which there is no adequate remedy by appeal.  *State ex rel. Romley v. Superior Court*, 181 Ariz. 378, 380, 891 P.2d 246, 248 (App. 1995).  In the exercise of our discretion, we accept special action jurisdiction.

**DISCUSSION**

**¶12**          We review the superior court's ruling on a motion to disqualify counsel for an abuse of discretion.  *Simms v. Rayes*, 234 Ariz. 47, 49, ¶ 8, 316 P.3d 1235, 1237 (App. 2014).  An abuse of discretion occurs when the court "makes an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10, 330 P.3d 1013, 1016 (App. 2014) (internal quotation omitted).  As the party seeking disqualification, Hargrove carried the burden of proof.  *Simms*, 234 Ariz. at 50, ¶ 8, 316 P.3d at 1238.  The law is well established that "because every litigant has the right to the counsel of its choice a party should not be allowed to disqualify opposing counsel for mere strategic or tactical reasons."  *Sec. Gen. Life Ins. Co. v. Superior Court In & For Yuma Cnty.*, 149 Ariz. 332, 335, 718 P.2d 985, 988 (1986).

**¶13**          As set forth in ER 3.7(a), a lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

**¶14**          The primary, contested issue in the current litigation stems from the circumstances surrounding the stipulation to dismiss the American Family litigation.  The Orlandos assert that Hargrove was given proper notice of their intent to dismiss the action and did not object.  Hargrove, on the other hand, avowed she never communicated with anyone regarding the stipulated dismissal and was not aware of the dismissal until it was agreed to by the Orlandos and WMC.  She further avowed that she "never did anything to abandon those claims."

**¶15**          At the August 1, 2014 hearing on the cross-motions for disqualification, Carman acknowledged that he was both a named witness and nonparty at fault in the American Family litigation.  Carman argued,

however, that his status as a named witness and nonparty at fault was moot because Hargrove "abandoned" the American Family litigation. Nonetheless, when questioned by the superior court, Carman admitted that he would have "a conflict of interest in this case" if Hargrove did not, in fact, abandon the litigation and the stipulation to dismiss was entered without her approval. Carman also acknowledged that the settlement was negotiated between Brian Warnock and counsel for American Family and further admitted, when pressed by the superior court, that he and the firm received a "significant benefit" when the American Family litigation was dismissed with prejudice and he and his firm were no longer exposed to potential liability in that matter.[1]

¶16        In their cross-motions for disqualification, the parties essentially agreed counsel on both sides would be necessary witnesses at trial. In WMC's response to the motion to disqualify, Warnock, after asserting that grounds for disqualification had not been established (because any potential testimony would be privileged), alternatively stated: "Either both Mr. Ducar and Mr. Warnock should be considered necessary witnesses and disqualified from representing their respective clients, or neither should be required to testify. The Ethical Rules and a reasonable examination of the underlying circumstances dictate that the former is a more judicious option." In his reply, Ducar agreed with Warnock that the attorneys for both parties were disqualified and Ducar moved to withdraw as counsel for Hargrove.

---

[1]        In their special action reply, the Orlandos contend that WMC did not represent them during the settlement negotiations. As support for this claim, the Orlandos submitted a recent declaration of Johnny J. Sorenson, the attorney representing American Family in the American Family litigation. In the declaration, Sorenson avows that he does not know "the exact scope" of Warnock's "formal relationship" with the Orlandos, but believes his representation of the Orlandos "was limited." Significantly, this information is contrary to Carman's representations at oral argument before the superior court that WMC handled the settlement negotiations on behalf of the Orlandos. In addition, this information was not presented to the superior court. Accordingly, we do not consider the Sorenson declaration or the Orlandos' argument related thereto. *See Napier v. Bertram*, 191 Ariz. 238, 239, ¶ 6, 954 P.2d 1389, 1390 (1998) (explaining that appellate courts generally will not consider arguments a party has failed to raise in the superior court). Based on the foregoing, Hargrove's motion to strike the Sorenson declaration is moot.

¶**17**      Applying ER 3.7 to these circumstances, the limited record before us supports the superior court's finding that the WMC attorneys are likely to be necessary witnesses in the current litigation. As acknowledged by Carman in the superior court, Warnock directly negotiated the dismissal of the American Family litigation, which substantially inured to the benefit of Carman and the entire WMC firm. The circumstances surrounding how and why the stipulation of dismissal was entered into are central to the issues in the current litigation, and the superior court could reasonably find that communications relating to WMC's actions during these negotiations cannot be readily obtained through another source. We therefore conclude that the superior court did not abuse its discretion in finding that a conflict warranting disqualification of WMC exists. *See* ER Rule 3.7 cmt. ("Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also invoke a conflict of interest between the lawyer and client."); *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 102, 624 P.2d 296, 299 (1981) ("[I]t is generally considered a serious breach of professional etiquette and detrimental to the orderly administration of justice for an attorney to take the stand in a case he is trying.").[2]

¶**18**      Notwithstanding this conflict, ER 3.7 "recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party." ER 3.7 cmt. "Even if there is risk of [] prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client."

---

[2]      The Orlandos contend that none of the WMC lawyers may be called as a witness because the Orlandos have not waived their attorney-client privilege. Whether the Orlandos waived the attorney-client privilege through the assignment and covenant is not the issue before us. Even if it were, an assertion of privilege only protects an attorney from being compelled to testify regarding attorney-client communications or attorney work-product and does not create a complete bar insulating an attorney from being called as a witness. *Cf.* State Bar of Arizona Ethics Opinion 00-11 (Nov. 2000) (stating lawyers must disclose non-privileged but ER 1.6 confidential client documents when directed to do so by a final order rendered by a court of competent jurisdiction even absent client consent). Furthermore, the Orlandos' argument is contrary to Warnock's acknowledgement in the cross-motion to disqualify that attorneys for both parties would be necessary witnesses.

*Id.* "It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id.*

**¶19**　　　　In their response and cross-motion to disqualify counsel, the Orlandos did not specifically claim substantial hardship; instead, they asserted generally that disqualification would require them to obtain new counsel, causing further delays in the litigation. At oral argument before the superior court, Carman briefly noted that a change in counsel would create a hardship for the Orlandos based on the duration of WMC's representation and the firm's negotiation of the assignment and covenant and general knowledge of the underlying cases. The Orlandos attached to their special action petition, however, an affidavit of Natalie Orlando dated August 22, 2014. In the affidavit, she avows that disqualification of WMC would create a substantial hardship because of financial constraints and difficulties in finding local counsel competent to handle the complexity of the case. Because this document was signed after the superior court's relevant ruling in this matter, and the Orlandos have not indicated that the document was filed with the superior court, we will not consider it. *See* Ariz. R.P. Spec. Act. 7(e) ("All references to the record shall be supported by an appendix of *documents in the record before the trial court* that are necessary for a determination of the legal issues raised by the petition.") (emphasis added). To the extent the Orlandos raised hardship in the superior court, it was limited to the difficulty in having to transfer WMC's acquired knowledge of the case to new counsel. We cannot say the superior court abused its discretion by implicitly finding the significance of the conflict outweighed the alleged harm to the Orlandos.[3]

**¶20**　　　　Finally, we must address whether disqualification of Carman and Warnock also requires disqualification of the entire WMC firm. As an initial matter, the Orlandos have cited no authority in support of their assertion that the superior court erred in disqualifying WMC. *See* Ariz. R.

---

[3]　　　　To the extent the Orlandos argue Hargrove waived the disqualification issue by failing to move for WMC's disqualification for almost a year after the stipulated dismissal, we note the Orlandos did not raise this argument in their response to the motion for disqualification or at the hearing. We therefore do not consider it. *See Napier*, 191 Ariz. at 239, ¶ 6, 954 P.2d at 1390. We also note that in May 2014 Hargrove filed a lawsuit against WMC alleging conversion, interference with contract or business expectancy, breach of fiduciary duty, legal malpractice, aiding and abetting tortious conduct, negligence and civil conspiracy. The superior court expressly indicated it did not consider the filing of this lawsuit in reaching its conclusion, nor do we consider it here.

P. Spec. Act. 7(e) (petition shall include citations to authorities). Moreover, on the record before us, we find no abuse of discretion.

**¶21** As set forth in ER 3.7(b), a lawyer may "act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by ER 1.7 or ER 1.9." In addressing ER 3.7, our supreme court noted that a law firm may continue to represent a client when one attorney is called as a witness unless a conflict of interest exists under ER 1.7 or ER 1.9, "or *disqualification is appropriate for some other reason*." *Sec. Gen. Life Ins. Co.*, 149 Ariz. at 336 n.2, 718 P.2d at 989 n.2 (emphasis added).

**¶22** Ethical Rules 1.7 and 1.9 "do not address possible conflict problems [in which] a testifying lawyer's law firm desires to remain in the case." *Jones v. City of Chicago*, 610 F. Supp. 350, 360 n.4 (N.D. Ill. 1994). Given the unique posture of this case, in which the WMC firm was itself exposed to liability in the underlying litigation, necessarily raising questions as to whether the personal interests of the WMC attorneys and the firm factored into the settlement of the American Family litigation, the record supports the superior court's conclusion that WMC's personal interests in the case mandate disqualification of the entire firm. *See id.* at 360, 362 (explaining that the "same reasons which support disqualification of the testifying attorney also support disqualification of the testifying attorney's entire firm" and that the "ultimate and continuing justification for the advocate witness rule, preservation of the integrity of the judicial process," required disqualification of both the testifying attorney and his firm). Accordingly, in this case and on this record, the Orlandos have not shown an abuse of discretion relating to the disqualification of WMC.

**¶23** Because we conclude the superior court did not abuse its discretion in disqualifying WMC in the current litigation, we need not address Hargrove's arguments that disqualification was also required under ER 1.9 as well as the appearance of impropriety.

**CONCLUSION**

¶24     We accept jurisdiction of this special action and deny the Orlandos' request to vacate the superior court's order disqualifying WMC from further representation in this case. We deny each party's request for attorneys' fees under Arizona Revised Statutes section 12-349.



Ruth A. Willingham · Clerk of the Court
FILED: gsh