**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0013-22

GAIL PALMINTERI,
individually and as
Executrix of the Estate of
ANTHONY PALMINTERI,

     Plaintiff,

v.

WILLIAM STOCKMAN,

     Defendant-Respondent,

and

ORADELL ANIMAL HOSPITAL,
INC.,

     Defendant-Appellant.

_____

Argued April 26, 2023 – Decided July 11, 2024

Before Judges Gooden Brown and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000127-21.

Andrew Gimigliano argued the cause for appellant (Mandelbaum Barrett, PC; Andrew Gimigliano and Robert C. Scrivo, of counsel and on the briefs).

Eric S. Latzer argued the cause for respondent (Cole Schotz, PC; Steven R. Klein and Eric S. Latzer, of counsel and on the brief, Arnold P. Picinich, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

On leave granted, defendant Oradell Animal Hospital, Inc. (OAH), appeals from the July 15, 2022 order of the Chancery Division denying its motion to disqualify Cole Shotz, PC (CS) as counsel for defendant William Stockman. We affirm.

I.

We assume for purposes of this appeal that the following facts, which are alleged in the pleadings, but may be in dispute, are true.

OAH, founded in 1961, and incorporated in 1973, operates a veterinarian hospital in Bergen County. In 2010, OAH had three shareholders: Anthony Palminteri, who held forty-five percent of the shares, Stockman, who held forty-five percent of the shares, and Paul Gambardella, who held ten percent of the shares. At that time, CS, a law firm that had long represented OAH, primarily through partner Henry Matri, drafted an amended shareholders agreement

(Shareholders Agreement). The shareholders did not have separate, independent counsel when negotiating or executing the Shareholders Agreement, which appointed the three shareholders as members of OAH's board of directors. The Shareholders Agreement provides that upon the death of a shareholder, the legal representative of the decedent shall be obligated to sell the deceased shareholder's shares to OAH within sixty days of death. The closing on the purchase may be delayed for up to thirty-six months from the death of the shareholder, in the sole discretion of the surviving directors of OAH.

In 2010, after execution of the Shareholders Agreement, CS stopped representing OAH. Joseph Torre replaced CS as OAH's corporate counsel.

In 2015, the shareholders amended the Shareholders Agreement through a joint resolution to provide, in part, that upon the death of a shareholder, OAH may toll the payout of a shareholder's interest for up to forty months from the shareholder's death. The amendment was drafted by Torre. The Shareholders Agreement also states that as "long as any part of the purchase price of shares of Stock sold" to OAH "in accordance with this Agreement remains unpaid, the Corporation shall not declare or pay dividends on its Stock."

The Shareholders Agreement contains a provision entitled "Disability of Paul." The parties dispute the meaning of this provision, its applicability to

Stockman, and whether a 2017 amendment that purported to extend the "Disability of Paul" provision to Stockman, which was drafted by Torre, was adopted by the shareholders.

In June 2019, Stockman's New Jersey veterinarian license was changed to inactive status. The parties dispute the circumstances surrounding this development, with Stockman contending that Palminteri or his spouse, plaintiff Gail Palminteri, or both acting in concert, intentionally caused his license to lapse without his knowledge or consent.[1]

In October 2020, Palminteri and Stockman bought out Gambardella's interest in OAH after negotiations that spanned several years. Each executed separate agreements with Gambardella, which resulted in each becoming fifty-percent shareholders of OAH. CS represented Stockman in this transaction, initially through Matri, but after Matri left CS in 2018, through partner Roger Iorio. Torre represented Palminteri and OAH in this transaction.

On November 10, 2020, Palminteri died. Stockman takes the position that Palminteri's death left him as the sole surviving member of OAH's board of directors. Plaintiff, however, argues that after Palminteri died, the OAH board

---

[1] Because they share a surname, to avoid confusion we refer to Anthony Palminteri as Palminteri and Gail Palminteri as plaintiff.

A-0013-22

consisted only of Rita Angelo, Kristi Gannon, and Donald Schrope, who were put in place in 2020 with the assistance of Torre. She alleges that since late 2018, Stockman had been absent and out of touch with the daily operations of OAH and was no longer a member of the OAH board.

Shortly after Palminteri's death, Stockman wrote to Angelo and stated that he was removing Torre as OAH's counsel. On November 13, 2020, Stockman signed a resolution on behalf of the OAH board terminating Torre as OAH's counsel. CS drafted that resolution on behalf of Stockman. Torre refused to recognize Stockman's authority to remove him.

Plaintiff, as executrix of Palminteri's estate, began negotiations with Stockman regarding OAH's purchase of Palminteri's shares. While negotiations were ongoing, on January 15, 2021, sixty-six days after Palminteri's death, Iorio, purporting to act as counsel for both OAH and Stockman, issued a letter to plaintiff's counsel stating that pursuant to the Shareholders Agreement, OAH elected to toll the time for closing on its purchase of Palminteri's shares. The letter stated that the exercise of the tolling provision was made at the election of Stockman, the sole surviving director of OAH. Plaintiff refused to effectuate the sale of Palminteri's shares to OAH.

5

On June 1, 2021, plaintiff, individually, as executrix of Palminteri's estate, and purportedly on behalf of OAH as a nominal defendant, filed a verified complaint in the Chancery Division. She alleged that: (1) Stockman's purchase of half of Gambarella's shares in 2020 violated the Shareholders Agreement because Stockman lacked the mental capacity to enter a contract, was disabled, and was not a licensed veterinarian when the transaction took place; (2) Iorio and Stockman's son, Gary Stockman, exercised undue influence over Stockman to purchase half of Gambardella's shares; (3) the attempt by OAH and Stockman to toll the purchase of Palminteri's shares was ineffective because it was asserted more than sixty days after Palminteri's death and resulted in a waiver of OAH's right to purchase Palminteri's shares; (4) since Palminteri's death, Stockman has usurped and opposed the shareholder rights of Palminteri's estate by asserting control over OAH and attempting to terminate OAH's general counsel; (5) Stockman is seeking to force Palminteri's estate to sell its shares at a value far below its fair value; and (6) Stockman is mentally disabled and controlled or unduly influenced by Iorio and Stockman's three children who are holders of powers of attorney executed by Stockman.

Plaintiff alleged as causes of action: (1) equitable fraud; (2) equitable appointment; (3) breach of contract; (4) breach of fiduciary duty; and (5)

6

oppression of a minority shareholder. She seeks: (1) reformation of the Gambardella stock purchase agreement to declare void and rescind Stockman's purchase of half of Gambardella's shares and to vest those shares in Palminteri's estate; (2) a declaration that Stockman acted illegally as a shareholder of OAH after he no longer was a licensed veterinarian; (3) appointment of a fiscal agent or provisional director to serve as a custodian of OAH; (4) a declaration that Palminteri's estate is not obligated to sell its shares to Stockman or OAH; (5) an injunction prohibiting Stockman from interfering with or taking any action related to OAH; (6) a declaration that Stockman is mentally and physically disabled under the shareholder agreement; and, in the alternative, (7) an order directing Stockman to purchase the shares held by Palminteri's estate, as well as attorney's fees and costs.

Stockman, represented by CS, filed an answer, counterclaims, and cross-claims. He alleged plaintiff wrongfully refused to effectuate the sale of Palminteri's shares to OAH after his death, despite her contractual obligation to do so. Stockman alleged that the Shareholder Agreement does not require the surviving director of OAH to effectuate the tolling provision on the purchase of shares in any specified timeframe and, in any event, plaintiff is obligated to sell the Palminteri estate's shares to OAH. In addition, he alleged plaintiff and

7

Palminteri deliberately caused OAH to not renew Stockman's veterinary license as grounds to attempt to void Stockman's October 2020 purchase of shares from Gambardella. Stockman styled his counterclaims as individual and derivative on behalf of OAH. He alleged that in his capacity as sole director of OAH, he authorized himself to assert his counterclaims on behalf of OAH.

He alleges: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of loyalty; (4) breach of the covenant of good faith and fair dealing; (5) tortious interference with prospective economic advantage and contract; (6) equitable estoppel; and (7) unjust enrichment. Stockman seeks: (1) specific performance, either by OAH's purchase of Palminteri's shares, plaintiff's purchase of his shares, or the sale of OAH; (2) appointment of a receiver or fiscal manager for OAH; (3) declaratory relief; and (4) damages, as well as attorney's fees and costs. OAH retained independent counsel to represent it in this matter.

At a January 7, 2022 conference, the court instructed the parties that they could not file any motion, other than a dispositive motion, without the court's permission. At a January 21, 2022 conference, Stockman requested the trial court's permission to move to disqualify OAH's counsel because he had not been properly retained by OAH. OAH's counsel responded that he did not know if he would file a cross-motion to disqualify CS as Stockman's counsel, but asked the

A-0013-22

court whether permission to make such a cross-motion was necessary. The court set a clear deadline for submission of OAH's motion to disqualify CS as Stockman's counsel: "You have my permission to file a cross-motion to disqualify [CS]. And that should be filed no later than Friday." The court entered an order that provided "No later than January 28, 2022, counsel may serve and file a motion to disqualify [CS] as counsel for [d]efendant."

OAH did not file a motion to disqualify CS as defendant's counsel on or before January 28, 2022.

On January 28, 2022, Stockman moved to compel OAH to pay $10 million in shareholder distributions. About two weeks after the January 28, 2022 deadline passed, new counsel filed an appearance on behalf of OAH. This appears to have obviated the basis for Stockman's proposed motion to disqualify OAH's prior counsel.

On February 10, 2022, OAH's new counsel opposed Stockman's motion to compel distributions. OAH argued that the court could not order distributions in the absence of a claim by Stockman against OAH. OAH's opposition did not allege that a conflict existed as a result of CS's representation of Stockman. The trial court denied the motion to compel distributions and granted him leave to

file amended pleadings to assert a claim against OAH with regard to distributions.

On March 11, 2022, Stockman filed amended pleadings, adding claims against OAH. Among other claims he requested: (1) an order compelling OAH to pay shareholder distributions; (2) a declaratory judgment that the section of the Shareholder Agreement concerning shareholder disability does not apply to him; and (3) and a declaratory judgment that would, in effect, declare that Stockman is the sole member of the OAH board of directors. Stockman asserted a single claim against OAH limited to a request for injunctive relief to compel OAH to make shareholder distributions.

On March 23, 2022, almost two months after the January 28, 2022 deadline to file a motion to disqualify CS, OAH wrote to CS arguing that Stockman's amended counterclaims made him an adversary of OAH in this matter, which is either the same matter in which CS had previously represented OAH or is substantially related to the matter in which CS had previously represented OAH and CS received confidential information that it can now use against OAH in representing Stockman. OAH urged CS to withdraw as Stockman's counsel and turn OAH's files over to OAH's counsel. CS declined

10

to withdraw as Stockman's counsel and stated that it would make OAH's files available for copying by OAH's counsel.

OAH asked the trial court for leave to file a motion to disqualify CS as Stockman's counsel. The court granted leave to file the motion, directed CS to turn over OAH's files, and appointed a special discovery adjudicator to address any disputes between CS and OAH.

On June 13, 2022, OAH moved for an order disqualifying CS as counsel for Stockman. OAH argued that CS was its counsel for many years and that attorneys from the firm, when acting as OAH's counsel, drafted the Shareholders Agreement which is the basis of many of Stockman's claims in the present matter. OAH argued that Stockman and OAH are adverse in this matter which is the same matter in which CS previously represented OAH; or is substantially related to CS's prior representation of OAH and (1) CS received confidential information from OAH that can be used against OAH in this matter; or (2) facts relevant to the prior representation are both relevant and material to CS's representation of Stockman in this matter. Thus, OAH argued, CS's representation of Stockman is prohibited by R.P.C. 1.9. Stockman opposed the motion.

A-0013-22

With respect to discovery, CS produced more than 15,000 pages of files it maintained with respect to its prior representation of OAH. OAH raised concerns regarding CS's production including: (1) a near total absence of emails surrounding the drafting of the Shareholders Agreement; (2) OAH's need to conduct discovery with respect to whether and how OAH's confidential information traveled among attorneys within CS, particularly in light of Matri's departure from CS and Iorio's assumption of primary responsibility for representing OAH and Stockman and his assertion that he was not aware of the details of Matri's representation of OAH; and (3) OAH's need for discovery concerning CS's role in representing Stockman, and purportedly OAH, in attempting to terminate OAH's corporate counsel in November 2020.

Also while the motion was pending, the discovery adjudicator issued a decision with respect to the parties' discovery disputes. The adjudicator denied OAH's request for discovery from CS beyond its production of documents, but ordered that CS circulate a memorandum to all of its lawyers who were at CS in 2020 and who had any dealing with OAH to inquire whether any of them had received confidential information from OAH. No attorney reported having received confidential information related to the claims raised against OAH by Stockman. OAH appealed the adjudicator's determinations to the trial court.

12

On July 15, 2022, the trial court issued an oral opinion denying OAH's motion to disqualify CS. The court found that CS's prior representation of OAH when drafting the Shareholders Agreement in 2010 was not the same matter as, or substantially related to, the claim Stockman raised against OAH to compel distributions or for interpretation and enforcement of the Shareholders Agreement. The court rejected OAH's argument CS represented OAH with respect to Stockman's attempt to remove Torre as counsel for OAH in November 2020. The court concluded instead that CS represented Stockman individually with respect to that matter.

In addition, the court concluded that even if Stockman's present claims are substantially related to CS's prior representation of OAH, OAH cannot establish that CS received confidential information during its representation of OAH that it can use against OAH in this matter. The court found that OAH was provided sufficient discovery and the opportunity to search that discovery for evidence that Marti received confidential information from OAH that was passed on to attorneys at CS. The court also noted that any communications between CS and OAH containing confidential information would not only be in the possession of CS, but also in the OAH's own files. However, OAH produced no evidence of the receipt or transmission confidential information by CS. The court

A-0013-22

affirmed the discovery adjudicator's decision rejecting OAH's request for further discovery with respect to the disqualification motion.

Finally, the trial court found that OAH waived its right to object to any conflict in CS's representation of Stockman in this matter. The court found that OAH was aware of Stockman's various claims and CS's representation of Stockman from the initiation of this matter. In addition, the court found that in January 2022, OAH raised the issue of moving to disqualify CS, and the court established a deadline of January 28, 2022 to make such a motion. OAH, however, did not file a motion by that deadline, instead waiting nearly five months to move to disqualify CS. The court rejected OAH's argument that its motion was not ripe until defendant filed his amended pleadings. A July 15, 2022 order memorializes the trial court's decision.

We subsequently granted OAH's motion for leave to appeal. We also granted OAH's motion for a stay of the trial court proceedings pending resolution of the appeal.[2]

---

[2] Prior to the submission of the parties' briefs, Stockman died. His son Ken Stockman was appointed personal representative of the estate. We were notified of Ken Stockman's intention to substitute Stockman's estate as a party in the trial court, but have not been informed of the outcome of that motion.

II.

Disqualification of counsel is a "drastic measure" that courts should hesitate to grant "except when absolutely necessary." Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1114 (D.N.J. 1993); see also J.G. Ries & Sons, Inc., 384 N.J. Super. 216, 231 (App. Div. 2006) (referring to disqualification as "drastic relief"). "Disqualification motions are . . . viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019).

Whether counsel should be disqualified is an issue of law "subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010); State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015). Moreover, when "'the trial judge had no factual disputes to resolve on credibility grounds and only legal conclusions to draw,' reviewing courts do not 'defer to the trial judge's findings' or ultimate decision." Hudson, 443 N.J. Super. at 282 (quoting State v. Bruno, 323 N.J. Super. 322, 331 (App. Div. 1999)).

A court's determination of whether an attorney has a conflict of interest is guided by the Rules of Professional Conduct (RPCs). See Trupos, 201 N.J. at 461-62. The RPCs set forth the "enforceable standards of behavior for lawyers."

A-0013-22

State v. Rue, 175 N.J. 1, 14 (2002). OAH argues that the trial court erred when it did not disqualify CS based on RPC 1.9. We disagree.

RPC 1.9 addresses conflicts of interest related to former clients. The rule prohibits a lawyer who has previously represented a client from representing another client "in the same or a substantially related matter" where the former client's and the current client's interests are materially adverse. RPC 1.9(a). RPC 1.9 also prohibits lawyers from using or disclosing confidential information related to their prior representation to the disadvantage of the former client, except if other provisions in the RPCs would permit or require disclosure of that information or if the information has become generally known. RPC 1.9(c).

"[M]atters are deemed to be 'substantially related' if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation." O Builders & Assocs., Inc. v. Yuna Corp. of N.J., 206 N.J. 109, 125 (2011) (quoting Trupos, 201 N.J. at 451-52 (2010)).

A-0013-22

"[T]he burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it 'bears the burden of proving that disqualification is justified.'" Trupos, 201 N.J. at 463 (quoting Div. of Youth & Fam. Servs. v. V.J., 386 N.J. Super. 71, 75 (Ch. Div. 2004)); Alexander, 822 F. Supp. at 1114 (noting the "heavy burden" and "high standard of proof" required for disqualification). When deciding a motion to disqualify counsel the court is required "to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988) (internal quotation marks and citation omitted). In doing so, the court must undertake a "painstaking analysis of the facts." Dental Health Assocs. of S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022) (quoting Dewey, 109 N.J. at 205).

OAH first argues that CS represented OAH in this matter when it drafted the derivative demand for distributions at the direction of Stockman. According to OAH, the demand, issued under Stockman's authority as what he believed to be his positions as the sole shareholder and sole director of OAH, authorized Stockman to file the derivative claim. OAH contends that it is axiomatic that, in drafting documents at the behest of Stockman in his purported role as director

of OAH, CS had to understand that it was providing professional advice and assistance to OAH.

We agree with the trial court's rejection of this argument. A derivative action is an action brought by a shareholder to assert the rights of a corporation. See In re PSE&G S'holder Litig., 173 N.J. 258, 277-78 (2002). While deemed to belong to the corporation, derivative actions allow individual shareholders to protect their interests from directors' misfeasance and malfeasance affecting shareholders as a whole. See Strasenburgh v. Straubmuller, 146 N.J. 527, 549-50 (1996).

Courts have held that asserting a derivative claim on behalf of a corporate entity does not create an attorney-client relationship with the entity. See Simms v. Rayes, 316 P.3d 1235, 1238-39 (Ariz. Ct. App. 2014) (finding no conflict of interest where law firm filed a derivative claim on corporate entity's behalf while simultaneously defending individual shareholder against the corporate entity, reasoning the firm had no attorney-client relationship with the corporate entity); Shen v. Miller, 150 Cal. Rptr. 3d 783, 786, 791 (Ct. App. 2012) (similar); see also In re Dayco Corp. Derivative Sec. Litig., 102 F.R.D. 624, 630 (S.D. Ohio 1984) ("case law is virtually unanimous in holding that one counsel can represent a stockholder bringing both an individual and a derivative action.").

A-0013-22

It is well established that "representation is inherently an aware, consensual relationship," In re Palmieri, 76 N.J. 51, 58 (1978), that requires client consent. See Herbert v. Haytaian, 292 N.J. Super. 426, 437 (App. Div. 1996). There is no evidence of a written agreement or oral representation establishing an attorney-client relationship between CS and OAH. To the contrary, the record contains ample evidence that there was never a consensual attorney-client relationship between CS and OAH in this matter. Stockman never sought to retain CS as OAH's counsel. In fact, as the trial court found, OAH "itself and Mr. Torre in particular rejected any effort by Stockman to assert any interest or control of the hospital." Long before CS drafted the derivative demand for distributions, OAH took the position that Stockman is not a member of the OAH board of directors. In addition, prior to CS drafting the derivative demand, Torre rejected Stockman's effort to remove him as OAH's counsel, contesting Stockman's claim of authority to act on behalf of OAH. OAH cannot take those positions and simultaneously argue that CS represented OAH at the direction of Stockman when it drafted the derivative demand for distributions. Notably, OAH has had its own independent counsel in this matter since the filing of its first pleading.

A-0013-22

We also agree with the trial court's conclusion that CS's drafting of the Shareholders Agreement more than a decade ago, during which it represented OAH, is not substantially related to the claim Stockman brought against OAH in this matter. Stockman's only claim against OAH seeks injunctive relief compelling OAH to make income and tax-related distributions to Stockman. Although that claim was necessarily asserted against OAH, plaintiff created the claim by controlling OAH and causing it to stop making distributions. Notably, when OAH opposed Stockman's motion to compel distributions, OAH did not contend that any portion of the Shareholders Agreement was relevant to whether Stockman is entitled to distributions.

In addition, the dispute concerning the disability provision of the Shareholders Agreement, and whether it applies to Stockman, is between Stockman and plaintiff, not Stockman and OAH. Similarly, the provision of the Shareholders Agreement blocking distributions when any portion of a purchase price of shares sold to OAH remains unpaid is not in dispute between Stockman and OAH. The provision applies during a buyout. Plaintiff, however, has refused to sell Palminteri's shares. Nor is the provision of the Shareholders Agreement concerning the OAH board members in dispute between Stockman and OAH. The dispute centers not on an interpretation of the Shareholders

A-0013-22

Agreement but on evidence and actions of plaintiff and OAH purporting to replace Stockman as a member of the OAH board of directors, all of which took place more than ten years after CS's representation of OAH ended.

Because we agree with the trial court that CS did not represent OAH in this matter and that this matter is not substantially related to the matter in which CS had previously represented OAH, we need not address at length OAH's argument that the trial court unduly limited its ability to seek discovery. We note only that the trial court found that CS provided fulsome discovery which revealed no confidential information obtained by CS in it prior representation of OAH that had been communicated to the CS attorneys who represent Stockman in this matter.

We "'normally defer to a trial court's disposition of discovery matters . . . unless the court has abused its discretion . . . .'" Connolly v. Burger King Corp., 306 N.J. Super. 344, 349 (App. Div. 1997) (quoting Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)). Abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quotations and citation omitted). "Under this standard, 'an appellate court should not substitute its own judgment for that of the trial court,

unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 362 (App. Div. 2014) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). We see no basis in the record to disturb the trial court's discovery decision.

To the extent we have not specifically addressed any of OAH's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The July 15, 2022 order is affirmed. The November 15, 2022 stay is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-0013-22